IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

SAMUEL ROBINSON, on behalf of
himself and a class of others similarly
Situated,

Plaintiffs,

v.

SHERIFF JIM NEIL, individually and
In his capacity as Sheriff of Hamilton
County Ohio

Defendant

Class Action Complaint
and jury demand

CASE NO.

## Introduction

1. This is an action pursuant to 42 U.S.C. §1983 challenging the overcrowded conditions endured by detainees at the Hamilton County Justice Center.

2. This Court has jurisdiction pursuant to 28 U.S.C. §1331, and venue is proper under 28 U.S.C. §1391(b) as the Defendant is situated in this judicial district.

## Parties

3. Plaintiff Samuel Robinson is presently an inmate of the Hamilton County Justice Center. He is serving a 180-day sentence from the Hamilton County Court of Common Pleas on a conviction of a drug possession charge.

4. Defendant Jim Neil is the Sheriff of Hamilton County. In that capacity Defendant Neil is responsible for the Hamilton County Justice Center including the care and treatment of inmates detained in that facility. He has the final policymaking authority over the jail for the actions at issue in this complaint. He

1

is responsible for ensuring that the policies and practices of the Justice Center comply with Constitutional requirements for the treatment of jail detainees. Sheriff Neil is sued in his official and individual capacities for the challenged conditions of confinement.

## Statement of Facts

5. Samuel Robinson suffers from Osteonecrosis (Avascular Necrosis) a disease that develops as a consequence of the loss of blood supply to the bone which causes the bone to die. If the affected bone is near a joint, the joint surface can collapse. As osteonecrosis progresses the pain that is associated with it limits range of motion and becomes disabling.

6. Samuel Robinson for some number of years has had this disease. He is disabled by it and is in constant pain. Simple movements such as getting out of bed, sitting or bending down are painful and without proper medication are excruciatingly painful.

7. Samuel Robinson was charged with possession of cocaine in an amount that was less than 5 grams in violation of R.C. 2925.11 (A) and was convicted on 6/28/2017 and given a sentence of 180 days in the Hamilton County Justice Center.

8. Mr. Robinson entered the Hamilton County Justice Center on 8/4/2017 and on 8/9/2017 was assigned to Pod South 21 (S21).

9. Because of the overcrowding of the Hamilton County Justice Center Mr. Robinson was assigned to a "boat" for sleeping purposes and not assigned to a cell with a bunk.

10. The "boats" are casket-like plastic shells that are placed on the floor in the middle of the pods where newly admitted inmates must sleep until a cell becomes available after inmate turnover. New inmate admittees can sleep on the floor for weeks waiting for an available cell. A pod often is cluttered with much of its floor space covered by "boats."

11. During the relevant time there were, on average, approximately seven to ten boats in Plaintiff's pod. Plaintiff believes that this is typical of the number of boats used in many other pods at the Justice Center.

12. Inmates sleeping in boats have access only to a single toilet in one cell during the hours of "lights out." "Lights out" in the pod area is only the dimming of the large bank of lights that ring the ceiling of the pod.

13. Inmates, including Plaintiff, suffer from sleep deprivation as a result of having to be in "boats" during the night hours.

14. Mr. Robinson has witnessed as many as ten "boats" on the floor of the pod at one time.

15. The crowding of the floor of the pods has resulted in violent encounters between inmates and guards. Mr. Robinson witnessed one such violent encounter between a guard and an inmate that resulted in the inmate being handcuffed and taken to solitary.

3

16. On June 14, 2017 the Sheriff of Hamilton County announced a state of emergency at the Hamilton County Justice Center due to jail overcrowding. In a memo to Commissioner Portune, the Sheriff stated:

> For approximately a year now I have been warning all county agencies of the disturbing and unsustainable upward trend of our inmate population count at the jail. As the Commanders pointed out in their letter to me (attached) we reached a boiling point this week. I cannot and will not jeopardize the safety of my Deputies and subject them to an ongoing volatile, dangerous environment in our jail. Nor will I put the inmates, medical staff and others in harm's way.
>
> . . . Your own County Risk Management, as well as the Hamilton County Prosecutor's Office and State Jail Inspectors all concur we are now well outside of acceptable practices at the jail. (Ex. E).

17. The Jail houses inmates that now exceed twice its design capacity. A significant consequence of this jail overcrowding is the need to use the "boats" and the unsafe conditions resulting therefrom.

18. The Court and Jail Services Division Commander of the Sheriff's office has determined that, "We can no longer manage a safe environment for both our staff and inmate population." (Ex. F).

19. The above characterization by the Division Commander remains today.

20. When Mr. Robinson was advised by the Sheriff Deputy on S42 that he would have to sleep in a "boat," Mr. Robinson stated that he could not "get down and back up" out of the boat because of his disease. Mr. Robinson inquired of the Deputy when a cell would become available and the Deputy replied that he had no idea, but would ask his supervisor. When he was finally informed that there was no cell

available and that he was assigned to a "boat." Mr. Robinson again protested, and as a result he was sent to solitary confinement as a punishment.

21. Solitary confinement consists of being confined in a cell for 23 hours a day with no phone privileges, no T.V. no access to the library, and disciplinary food — a disciplinary burger, known as a "DBU" which is inedible.

22. Mr. Robinson was in solitary until 8/9/2017. He was unable to eat his entirely unpalatable DBU during that time.

23. On 8/9/2107 Mr. Robinson filed a grievance, Exhibit A, which stated "I have advascular sclerosis (sic) which is a bone disease. I am unable to get off the floor easy and the officer on second shift made me go to the hole instead of giving me the medical attention that I needed. I don't know the officer's name but I was on S21 when this occurred. On top of that they served me DBU's. I have high blood pressure and high chloresterol" (sic).

24. On 8/29/2017, not having a response to his grievance of 8/9/2017, filed a grievance that stated, in part, "… I didn't get a response from my last grievance from being punish (sic) for my health conditions. I would like to here (sic) a response from this grievance…" (Ex. B)

25. Again not having a response to his 8/9/2017 grievance, Mr. Robinson filed a third grievance on 9/13/2017 stating "I would like a response or copy of my grievance date submitted on 8/9/17 for being punished for my health conditions…" (Ex. C).

26. On 8/25/2017 a motion was filed on Mr. Robinson's behalf in the Hamilton County Court of Common Pleas seeking to mitigate his sentence. (Ex. D). Attached to the memorandum in support of the motion were medical records indicating that Mr. Robinson's diagnosis included, "CHRONIC PAIN SYNDROME, AVASCULAR NECROSIS (HCC) CHRONIC PAIN OF BOTH SHOULDERS, CHRONIC PAIN OF BOTH ANKLES, BILATERAL HIP PAIN, and KNEE EFFUSION, LEFT."

27. The motion was denied by Judge Jerome Metz. On 9/8/2017 a lawyer was appointed for the purpose of an appeal.

28. Mr. Robinson remains in the Hamilton County Justice Center with an outdate of 1/19/2018.

29. Mr. Robinson will continue to reside in an unsafe and violent environment until his discharge from the jail.

30. To avoid violent encounters Mr. Robinson confines himself to his cell practically all day and night.

## Class Action Allegations

31. Samuel Robinson brings this action on his behalf and on behalf of a class of those similarly situated pursuant to Rule 23 (b)(2) of the Federal Rules of Civil Procedure.

32. Plaintiff Robinson seeks to represent a class consisting of all inmates of the Hamilton County Justice Center since October 2015.

33. Plaintiff estimates that in that two year period there were over 5,000 persons detained at the Hamilton County Justice Center.

34. Common questions of law and fact exist as to all class members. Among the common questions are:

    a. whether the conditions of confinement in an overcrowded jail violate class members' rights under the Eighth and Fourteenth Amendment to the United States Constitution by subjecting them conditions of confinement that subject each of them to imminent risk of physical and psychological harm;

    b. whether the Hamilton County Sheriff, Jim Neil, and Hamilton County maintain a policy, custom and/or widespread practice of violating class members' rights under the Eighth and Fourteenth Amendment through the conditions under which the Sheriff's office confines the class members;

    c. whether the policymakers of the Sheriff's office instituted the conditions of confinement, condoned such conditions, and/or were deliberately indifferent to them; and

    d. whether Defendant Neil failed in his supervisory responsibility to have avoided the violations of class members' rights.

35. The claims of the Plaintiff are typical of the claims of the class.

36. Plaintiff Robinson will fairly and adequately represent the interests of the class. Plaintiff is represented counsel who has had experience in class actions and jail conditions litigation.

37. The party opposing the class the class has acted or has refused to act on grounds that apply generally to the class as a whole, so that final injunctive relief and corresponding declaratory relief is appropriate for the entire class.

38. The questions of law and fact common to the members of the class predominate over any individual issues that may exist.

39. A class action would be the most fair and efficient method of adjudicating the class members claims and therefor the superior method of adjudication.

**Count I – Class Claims pursuant to 42 U.S.C. §1983 for violations of the Eighth and Fourteenth Amendments**

40. Each preceding paragraph of this complaint is incorporated herein.

41. The Defendant has violated Plaintiffs' and class members' rights under the Eighth and Fourteenth Amendments by subjecting Plaintiff and class members to dangerous conditions of confinement and creating a substantial risk of serious harm to Plaintiffs and not incidentally to Deputy Sheriffs working in the Hamilton County Justice Center, and, in fact, causing serious harm to Plaintiffs and class members.

42. The policies, customs and/or widespread practices of the policy members of the Hamilton County Sheriff's Office are the moving force behind and the cause of these violations.

43. As a direct result of Defendants conduct as described above, Plaintiff has suffered both physical pain and serious emotional stress.

44. In addition, it is likely that many of the class members have suffered both physical as well as emotional injuries as a result of Defendant's conduct described above.

**Count II – Plaintiff Robinson's individual claim pursuant to 42 U.S.C. §1983 for a violation of the Fourteenth Amendment**

45. Each preceding paragraph of this complaint is incorporated herein.

46. The confining of the Plaintiff to solitary confinement for four days for his mere complaining of his inability to sleep on the floor in a "boat" because of his medical condition and resulting pain is a violation of Plaintiff's rights under the Eighth and Fourteenth Amendment to the United States Constitution.

**Requests for Relief**

WHEREFORE, Plaintiffs request this Court to:

A. Certify this case as a class action pursuant to Rule 23 (b)(2) of the Federal Rules of Civil Procedure;

B. Issue a preliminary and permanent injunction against the Defendant enjoining the Defendant from using "boats" or any other temporary sleeping fixture as a means of housing inmates beyond the cell capacity of the Hamilton County Justice Center;

C. Enjoin Defendant from maintaining dangerously high inmate population numbers;

D. Award Plaintiff Robinson damages for his pain and suffering for having been confined in solitary confinement;

E. Award Plaintiffs' counsel reasonable attorneys fees;

F. Grant such other relief as is just and necessary.

                                  Respectfully submitted,

                                  /s/Robert B. Newman
                                  Robert Brand Newman (0023484)
                                  215 E. 9th St. Ste. 650
                                  Cincinnati, OH 45202
                                  513-639-7000
                                  robertnewman@newman-meeks.com


                                  /s/Michael J. O'Hara
                                  Michael J. O'Hara ( 0014966 )
                                  O'Hara, Taylor, Sloan & Cassidy
                                  25 Town Center Blvd. Ste. 201
                                  Covington, KY 41017
                                  859-221-2000
                                  mohara@oharataylor.com


                                  /s/Marc D. Mezibov (0019316)
                                  Mezibov Butler
                                  615 Elsinore Pl. Ste. 105
                                  Cincinnati, OH 45202
                                  513-621-8800
                                  mmexibov@mezibov.com


## JURY DEMAND

Plaintiffs demand trial by jury as provided by law.

                                  /s/ Robert B. Newman

Date Submitted: 8/4/17

Date Reviewed: _____

# HAMILTON COUNTY SHERIFF'S OFFICE
# CORRECTIONS
# INMATE GRIEVANCE

Date Assigned: _____

Date Due: _____

Date Returned: _____

| Inmate's Name | ID Number | Housing Location | Date of Grievance |
|---|---|---|---|
| Samuel Robinson | 1637581 | S42/F40 | 8/5/17 |

NATURE OF GRIEVANCE: I have advascular sclarosis, which is a bone disease. I'm unable to get off the floor easily and the officer on 2nd shift made me go to the hole instead of ~~me~~ giving me the medical attention that I needed. I don't ~~no~~ know the officers name but I was on S.21 when this occurred. On top of that they served me DBU's + I have high blood pressure + high cholesterol.

Inmate's Signature: [signed]

RECEIVED: _____ UNIT MANAGER: _____

COMMENTS: _____

DATE REFERRED: _____ TO: _____

DATE RECEIVED: _____ ACTION TAKEN: _____

INMATE'S SIGNATURE: _____

DEPARTMENT HEAD SIGNATURE AND DATE RETURNED TO CLASSIGICATION DEPT.

DATE RECEIVED CLASSIFICATIONS DEPARTMENT

COMPLETED GRIEVANCE SENT TO: _____ FILE DATE: _____

01-31-02

Ex A

Date Submitted: 8/29/17

Date Reviewed: _____

# HAMILTON COUNTY SHERIFF'S OFFICE
# CORRECTIONS
# INMATE GRIEVANCE

Date Assigned: _____

Date Due: _____

Date Returned: _____

| Inmate's Name | ID Number | Housing Location | Date of Grievance |
|---|---|---|---|
| | | | 8/29/17 |

**NATURE OF GRIEVANCE:**
On 8/29/17 the nurse on first shift has not been takeing me or my medication seriously. one day this next day that on this particular day she gave me a new blood pressure pill and told me to take it. and that I would be alright. now sgt Kilday and officer Miller witness this matter. from my understanding No medication is to be changed untill I speak with a doctor. I notice that I didn't get a response from my last grievance from being punish for my health conditions. I would like to here a response from this grieva

**Inmate's Signature** _____

**RECEIVED:** _____ **UNIT MANAGER:** _____

**COMMENTS:**
1.) Take to nurse on 9/8/17 about grievance sill need a copy.

**DATE REFERRED:** _____ **TO:** _____

**DATE RECEIVED:** _____ **ACTION TAKEN:** _____

2.) on 9/13/17 take to Doc need Xray's.

**INMATE'S SIGNATURE:** _____

**DEPARTMENT HEAD SIGNATURE AND DATE RETURNED TO CLASSIGICATION DEPT.**
_____

**DATE RECEIVED CLASSIFICATIONS DEPARTMENT**

**COMPLETED GRIEVANCE SENT TO:** _____ **FILE DATE:** _____

01-31-02

Ex B

Date Submitted: _____

Date Reviewed: _____

# HAMILTON COUNTY SHERIFF'S OFFICE

# CORRECTIONS

Date Assigned: _____

# INMATE GRIEVANCE

Date Due: _____

Date Returned: _____

| Inmate's Name | ID Number | Housing Location | Date of Grievance |
|---|---|---|---|
| | | | 9/13/17 |

**NATURE OF GRIEVANCE:** I would like a repsonse or copy of my grievance date submitted on 8/9/17 for being punished from my health conditions.

I'll also like to have a response or copy of my grievance date submitted on 8/29/17 for nurse or doctor changing my medication without speaking with me.

_____
Inmate's Signature

**RECEIVED:** _____ **UNIT MANAGER:** _____

**COMMENTS:** _____

_____

**DATE REFERRED:** _____ **TO:** _____

**DATE RECEIVED:** _____ **ACTION TAKEN:** _____

_____

_____

**INMATE'S SIGNATURE:** _____

_____
**DEPARTMENT HEAD SIGNATURE AND DATE RETURNED TO CLASSIGICATION DEPT.**

_____
**DATE RECEIVED CLASSIFICATIONS DEPARTMENT**

**COMPLETED GRIEVANCE SENT TO:** _____ **FILE DATE:** _____

01-31-02

Ex C

# HAMILTON COUNTY COURT OF COMMON PLEAS
## CRIMINAL DIVISION
## HAMILTON COUNTY, OHIO

| | |
|---|---|
| STATE OF OHIO | Case No. B1701492 |
| Plaintiff, | |
| | (Judge Jerome J. Metz) |
| vs. | |
| SAMUEL ROBINSON | MOTION TO MITIGATE SENTENCE |
| Defendant. | |

COPY FILED
CLERK OF COURTS
HAMILTON COUNTY
AUG 25 2017
AFTAB PUREVAL
COMMON PLEAS COURTS

Now comes the Defendant, through counsel, and respectfully request the Court the Court mitigate his sentence. Mr. Robinson pleaded guilty to the sole count of the indictment, possession of cocaine (F5). On June 13, 2017, the Court sentenced Mr. Robinson to 180 days in the Justice Center, and 3 years ISP probation. As a condition of probation, the Court ordered Mr. Robinson to enter and complete the Men's Extended Treatment Program. For the reasons set forth herein, Mr. Robinson is respectfully requesting the Court to mitigate his sentence. Specifically, Mr. Robinson is respectfully requesting that the Court permit him to enter into outpatient substance abuse treatment and avoid any further incarceration or lock-up facility.

Respectfully submitted,

Matthew S. Schuh (0085112)
Attorney for Samuel Robinson
Schuh & Goldberg, LLP
2662 Madison Road
Cincinnati, Ohio 45208
(513) 321-2662
(513) 321-0855 (Fax)
mschuh@sandg.net

Ex D

## MEMORANDUM IN SUPPORT

Mr. Robinson is a very sick man who suffers from chronic pain, hypertension, and avascular necrosis. Mr. Robinson is scared for his health, and does not believe that the Men's Extended Program nor the Justice Center is capable of providing the medical care he needs. In a perfect world, Mr. Robinson would like to secure outpatient treatment through the Talbert House. He believes the Talbert House would also help him obtain the medical care that he needs.

For the Court's review, counsel has attached medical records provided by Mr. Robinson dating back to 2013. See Exhibits A though G. The medical records are not comprehensive, but should serve to establish Mr. Robinson's long standing health problems.

Mr. Robinson struggles from avascular necrosis of the hip. Avascular necrosis causes a bone to die due to a lack of blood supply. This condition causes him extreme pain, and resulted in a total hip arthroplasty of the left hip in 2013. (See Ex. B, p.6, and Ex. G). Despite the replacement of the left hip, Mr. Robinson still suffers from avascular necrosis. The diagnosis is specifically mentioned in the medical records dated, November 7, 2014 (Ex. F, p. 2 – discharge instructions), May 3, 2015 (Ex. E, p. 3), and April 22, 2017 (Ex. C, p. 2), and June 19, 2017 (Ex. B, p. 5).

Mr. Robinson also suffers from chronic pain. In the medical records dated April 22, 2017), Mr. Robinson's diagnosis reads, "CHRONIC PAIN SYNDROME, AVASCULAR NECROSIS (HCC), CHRONIC PAIN OF BOTH SHOULDERS, CHRONIC PAIN OF BOTH ANKLES, BILATERAL HIP PAIN, and KNEE

EFFUSION, LEFT." (Ex. C, p 2). Chronic pain is also specifically referenced in the medical records dated May 3, 2015 (Ex. E, p.3), and November 7, 2014 (Ex. F, p. 1)

Mr. Robinson reports to counsel that he experience the most severe pain in his shoulders. Mr. Robinson had an appointment to see an orthopedic specialist regarding his shoulder on August 16, but missed his appointment because he was locked up in the Justice Center.

Mr. Robinson's daily medication is listed in his records dated June 27, 2017 (Ex. A, p. 1). For pain, Mr. Robinson takes amitriptyline (1 tablet nightly), asprin (1 tablet daily), oxyCODONE-aceteaminophen (1 tablet every 8 hours, as needed). Mr. Robinson also takes Lisinopril and hydrochlorothiazide to treat high blood pressure.

Mr. Robinson does not have access to his medicines in the Justice Center (other than aspirin), and as a result, has suffered immense discomfort. Further due to jail overcrowding, Mr. Robinson was given the difficult choice of sleeping on the floor, or in segregation.

For the foregoing reasons, Mr. Robinson respectfully requests that the Court consider mitigating his sentence such that Mr. Robinson can avoid lock-up, and secure the medical attention he desperately needs.

Respectfully Submitted,

_____
Matthew S. Schuh (0085112)
Attorney for Samuel Robinson
Schuh & Goldberg, LLP
2662 Madison Road
Cincinnati, Ohio 45208
(513) 321-2662
(513) 321-0855 (Fax)
mschuh@sandg.net

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing Demand upon the office of the Hamilton County Prosecuting Attorney.

_____
Matthew S. Schuh
Attorney for Samuel Robinson

Commissioner Todd Portune

President, Board of County Commissioners


Commissioner Portune,

This morning I received a thorough report from my Jail Commanders detailing a number of concerns related to overcrowding at the Hamilton County Justice Center. As you know we have had numerous meetings regarding this issue. For approximately a year now I have been warning all county agencies of the disturbing and unsustainable upward trend of our inmate population count at the jail. As the Commanders pointed out in their letter to me (attached) we reached a boiling point this week. I cannot and will not jeopardize the safety of my Deputies and subject them to an ongoing volatile, dangerous environment in our jail. Nor will I put the inmates, medical staff and others in harm's way. I have a statutory obligation to provide for the care, custody and control of the individuals being housed in our facility as well as keep the peace. Under our current situation I simply cannot fulfill those obligations. Therefore, as of today I am officially notifying you I have declared a "State of Emergency" at the Justice Center. I have reached out to neighboring counties to determine their ability to house a number of our inmates in an attempt to alleviate part of our overcrowding.

I'll remind you this is not an easy decision, but it is the right thing to do and my only option. State law does not allow me to alter inmate sentences. Your own County Risk Management, as well as the Hamilton County Prosecutor's Office and State Jail Inspectors all concur we are now well outside of acceptable practices at the jail. I have no choice but to act, and act I will, for the safety of everyone involved. As always I look forward to continuing to work with your Board, County Administration and other county agencies involved in criminal justice to look for both short term and long term solutions to this pressing problem.

Respectfully,


Sheriff Jim Neil




Ex E



# HAMILTON COUNTY
INTERDEPARTMENTAL CORRESPONDENCE

TO: Sheriff Jim Neil  
      Via Chain of Command  
AT: H.C.J.C.

FROM: Major Chris Ketteman  
          Jail Services Division

SUBJECT: Overcrowding

DATE: August 14, 2017

Sheriff Neil,

As you are aware, we are currently operating under a State of Emergency at the Justice Center. Since mid-June we have been consistently housing 25 Hamilton County inmates at the Butler County Jail to help alleviate our State of Emergency. Unfortunately, moving these inmates has provided only minimal relief of the overcrowding at the Justice Center, and at a steep cost. Every 30 days we are charged a significant fee in excess of $58,000. Despite this relocation, each night we are left with an average of 65 to 75 inmates for whom there is no cell in which to secure them and without a bed to sleep. These overflow inmates are currently being distributed throughout the rest of the Justice Center to sleep on "boats" in the open day-spaces. Due to jail minimum standards, these overflow inmates must have access to a working toilet and because of the current design of the Justice Center, the only available toilets are inside cells. Therefore, we must keep a cell unoccupied and open to the overflow inmates sleeping in the open day-spaces. Through this course of action, we are losing the ability to house two inmates in every one of these cells.

Due to the financial burden of housing inmates at Butler County, we have been tirelessly researching ways to return these inmates to the Justice Center. In order to do so, we had to consider ways to increase our capacity. We have been able to identify two immediate solutions. Both require an initial cost which would be recouped in less than a month.

Several years ago the showers were remodeled and a decision was made to remove all toilets in the day-space areas. Due to jail overcrowding, we are implementing a temporary solution and have inmates sleeping in the day-spaces. As stated previously, this requires us to leave one open cell in each affected unit so that the inmates have access to a toilet. We are currently utilizing 16 different units as overflow units; as a result, we have 16 cells that we cannot utilize to house inmates. If these cells were all double-celled, 32 more inmates could potentially be housed at the Justice Center.

It is the recommendation of the Jail Command Staff that the Board of County Commissioners purchase 26 toilets to be re-installed in all of the larger units of the Justice Center. By doing this, we would have much greater flexibility to adjust the floater units when needed. Due to the current State of Emergency, we are proposing that 16 toilets be purchased and installed immediately for each one of our floater units currently housing overflow inmates. The approximate cost for the purchase of the 16 of the 26 toilets would be approximately $48,000.

The Justice Center currently has 136 single bed cells. We researched the cost of purchasing additional beds and initially priced them at approximately $250 per bed. While we were in the process of pricing new beds, a Sergeant suggested that we contact the owners of Queensgate Correctional, since he was aware that they have used beds stored in that facility. After some negotiations, they agreed to sell us the beds at an extremely discounted rate of $25 per bed, totaling a mere $3,400. Therefore, we are requesting that the Board of County Commissioners

Ex F

purchase an additional 136 beds and install them in the single-bed cells, making them double-celled cells; this would potentially allow us to house an additional 136 inmates depending on classification.

Although the installation of the toilets and beds will not alleviate the overcrowding, it would be a large step in working towards our goal of not being forced to house inmates at Butler County. Again, the approximate cost of housing 25 inmates at Butler County is $58,000 a month. In comparison, the cost of installing the additional toilets and beds is approximately $51,400. By installing the additional beds and toilets, the likelihood of sending additional inmates to Butler County would be dramatically cut. Furthermore, the possibility of being able to return the inmates currently housed in Butler County would increase.

Although neither of these suggestions will completely eliminate our overcrowding, it will increase our flexibility in the manner in which we can house inmates. It is, therefore, our recommendation that discussions be held with the Commissioners to determine if they would purchase the additional beds and toilets.

Respectfully submitted,

Commander Dave Turner
Jail Services Division

Major Chris Ketteman
Jail Services Division