# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| **SAMUEL ROBINSON, ET AL.** | : | Case No. 1:17-cv-652 |
| Plaintiffs, | : | Judge Susan J. Dlott |
| vs. | : | Magistrate Judge Litkovitz |
| **HAMILTON COUNTY SHERIFF JIM NEIL** | : | <u>**ORDER APPROVING SETTLEMENT AGREEMENT**</u> |
| Defendant | : | |
| | : | |

This case came before the Court for a hearing as required by Fed. Civ. R. 23(e)(2) to determine whether a proposed class settlement was fair, reasonable, and adequate. The hearing was held in Courtroom B of the Hamilton County Justice Center because the class members were inmates in the jail, which is part of that facility. At the hearing, counsel for the parties provided the Court with information concerning the factual setting in which the case arose. Counsel informed the Court that the parties exchanged a vast amount of information. Counsel also provided the Court with relevant information regarding the class members, the settlement negotiations, the settlement terms, the notice provided to class members, the benefit to class members, why the settlement was fair, reasonable, and adequate, and the compensation and attorneys' fees. In addition, seven objectors where present at the hearing. One, Tionna Davenport, on advice of counsel in her criminal case, chose not to testify and was excused from the hearing in its early stages.

## Findings by the Court

Based upon the presentations of counsel and hearing testimony of the inmates filing objections, the Court makes the following findings of fact:

## I.     Summary of Case

The factual predicate for this case actually began with the 2008 financial crisis that led to the Hamilton County Sheriff closing the Queens Gate Correctional Facility that housed 800 inmates. In order to control the population, a series of release policies were adopted by then Sheriff Simon Leis, some of which were not authorized by Ohio law.

In June 2017, the number of inmates in the Hamilton County Justice Center spiked to 1,611 inmates. The current sheriff, Jim Neil, was forced to house inmates on temporary beds, more commonly called "boats," in the two gymnasiums in the Hamilton County Justice Center. This caused security and safety concerns, difficulty in locating inmates for distribution of medication and provision of medical care, difficulty with the provision of toilet facilities, and inadequate telephone access to inmates. About the same time, following the closure of the Queens Gate Correctional Facility, the Ohio courts had found some of the adopted release policies violated Ohio law.

Major Ketteman, the director of jail operations in the Hamilton County Justice Center, authored a letter on June 14, 2017, declaring an emergency under Ohio law and articulated the overcrowding issues outlined above. Major Ketteman documented a cascade of consequences caused by overcrowding that Plaintiffs contend violate class members rights as protected by the Eighth Amendment to the constitution. (See Doc. 8-

1, Page ID# 49-52, Ketteman Memorandum, June 14, 2017.) This declaration of emergency allowed Sheriff Neil to directly draw funds from the Hamilton County Auditor without an appropriation by the Hamilton County Board of County Commissioners, to pay for housing inmates in jail facilities located in other Ohio counties.

In September 2017, inmate Samuel Robinson filed a grievance, complaining that he had a medical condition preventing him from using a boat. This led to a class action complaint being filed on September 28, 2017, asserting, *inter alia,* that overcrowding at HCJC was causing class members to suffer conditions of confinement that violated their right not to be subjected to cruel and unusual punishment as protected by the Eighth Amendment to the United States Constitution. (Doc. 1, Page ID# 1) Two amended complaints adding named inmates and alleging the same unconstitutional conditions were filed thereafter. (Doc. 10, Page ID# 74, First Amended Complaint; Doc. 12-1, Page ID# 99, Second Amended Complaint.) Sheriff Neil filed an Answer on January 10, 2018 and opposed class certification. The Parties disputed whether unconstitutional conditions of confinement, similar to those outlined in the Ketteman Memorandum, continued after suit was filed, prompting an agreement to mediate.

The case was referred to Magistrate Judge Litkovitz for the sole purpose of conducting a settlement conference on December 5, 2017. After numerous conferences with Magistrate Judge Litkovitz and meetings between counsel for Inmate Robinson and Sheriff Neil, a proposed settlement was agreed upon by counsel for the parties. On May 11, 2018, the Court certified the Class, preliminarily approved the Class settlement,

3

ordered notice to be sent to Class members, and set a hearing on fairness, reasonableness, and adequacy of the proposed settlement.

During the time period between the Ketteman Memorandum of June 14, 2017 and the Parties agreeing upon the Proposed Settlement Agreement numerous changes took place in the physical make up and the operational procedures used in the Hamilton County Justice Center. These included:

a) 25 inmates were transferred to the jail in Butler County, Ohio;

b) 119 additional jail beds were purchased and installed in order to make all cells in the Hamilton County Justice Center, double cells;

c) The boats, when needed, were distributed into pods the 16 and 24 cell pods in the Hamilton County Justice Center instead of being collected in the gymnasiums;

d) Further, the boats were numbered to make locating a particular inmate for medication and medical care much easier;

e) The telephone system was modified to add telephones, to limit telephone calls to 20 minutes, and to lock out the most recent user so other inmates would have an opportunity to use the telephones;

f) The classification system (the one used by Sheriff Neil and his predecessor is approved by the National Institute of Corrections) was used for both cell and boat assignments;

g) The sheriff and the labor union representing corrections officers agreed to increase staffing by one additional corrections officer per floor when boats are in use;

h) Additional toilets were scheduled to be installed in the 16 and 24 cell pods that house inmates on boats; and,

i) Naphcare, the medical services provider for the Hamilton County Justice Center, began screening inmates to make certain there would be no physical impediment to the inmate being housed in a boat.

v) The parties agree that Dr. James Austin shall be appointed as the Court's expert witness and shall report to the Court on (a) whether the classification system employed by the Sheriff is being properly implemented by the Sheriff, (b) to evaluate the current release programs and protocols set out in this Consent Decree and to determine whether additional release policies and/or protocols should be ordered by the Court to alleviate overcrowding, and (c) to recommend any other action which the Sheriff could take to alleviate overcrowding in the jail, including an assessment of the adequacy of the Justice Center to house the offender population of Hamilton County that should properly be incarcerated rather than released by the Sheriff. The Sheriff shall provide the expert with such information as necessary for Dr. Austin to advise the Court on these subjects. The costs of Dr. Austin's work shall be borne by the Sheriff in an amount not to exceed $30,000.00.

**II.    The Class**

The Class consists of all current and future inmates in the Hamilton County Justice Center during the time period the settlement is effective. There are two parts of the Class. First, "Population Inmates" are those who have had an initial appearance before a judge who are held pending trial or held serving a sentence. Population inmates are held for longer periods of time that may span several months. The second

part of the class is "Detention Inmates", who are inmates that have not appeared before a judge and may only be held for 48 hours. (Doc. 34, Page ID# 295)

### III. **The Settlement Negotiations**

The settlement negotiations centered upon: (a) limiting the use of boats for each inmate; (b) limiting the number and locations of boats; (c) classifying inmates who may be assigned to boats; (d) limiting the number of inmates in the Hamilton County Justice Center; (e) remedies if the number of inmates exceed the limitation on the number of inmates in the Hamilton County Justice Center; (f) continuing the release policies initiated after the closure of the Queens Gate Correctional Facility; (g) providing for an expert to evaluate the classification system and release policies; (h) the prospect of additional jail space being provided; and, (i) screening inmates for physical impairments prior to a boat assignment being made. There were six in-person conferences with Magistrate Judge Litkovitz and two telephone conferences with Magistrate Judge Litkovitz. The parties exchanged numerous proposals and had several telephone and in-person meetings without Magistrate Judge Litkovitz. Sheriff Neil opened the Hamilton County Justice Center for tours by counsel and court personnel, and authorized access to his staff for interviews by Plaintiffs' counsel.

### IV. **Settlement Terms**

The result of the negotiations described above resolved the issues as follows.

(a) No Population Inmate may be assigned to a boat for more than 5 consecutive days in a month.

(b) The use of boats for Population Inmates is limited to 4 in each 16-cell pod and 6 in each 24-bed pod. No boats may be used in the Mental Health Unit or Medical Unit.

(c) The classification system will be used for Population Inmates both in cells and on boats.

(d) The problem with limiting inmates in the Hamilton County Justice System to a fixed number is that the classification system dictates how many single cell placements are required. In examining boat use, it was demonstrated that sometimes boats are required when the number of inmates is 1,350. Other times, no boats are needed when the total number of inmates exceeds 1,400. In order to maximize use of the Hamilton County Justice Center and to protect the inmates from overcrowding, the parties agreed that the classification system will be used to control population. When the population requires that the boats be used in excess of use formula set out in items (a) and (b) above, the sheriff is required to take immediate remedial action set out in item (e) below.

(e) The sheriff, should the limit be reached, shall: (1) send additional inmates to jail facilities in other Ohio counties; (2) utilize the pretrial release program without the limitations set by the bond imposed by the Municipal or Common Pleas Courts; (3) do both remedies (1) and (2); or (4) stop admitting inmates into the Hamilton County Justice Center and seek further relief from this Court.

(f) The sheriff is authorized to continue utilizing his 7 release policies, including those that may violate Ohio law.

(g) The county administrator agreed to provide the amount of $ 30,000 to hire an expert for the Court, Dr. Austin, to make recommendations concerning the classification system and the current release policies.

(h) The Hamilton County Board of County Commissioners is planning to authorize conversion of administrative space into additional housing for inmates within the Hamilton County Justice Center. Therefore, the length of this agreement is limited to two (2) years, so that the effect of the conversion of administrative space to housing space on overcrowding can be evaluated and the need to continue this order determined.

(i) The medical care provider, NaphCare, already screened all incoming inmates for medical issues and whether they have an impairment that prevents the inmate from climbing stairs. NaphCare agreed to extend the screening process to determine whether an incoming inmate had a physical impairment preventing a boat assignment. If such impairment exists, the inmate will not be assigned to a Boat.

**V.    Notice Given to Class Members**

Notice of the Class Settlement was broadcast on the in-house Hamilton County Justice Center television for all inmates starting at 1500 hours on May 15, 2018, and ran through May 16, 2018, at 1500 hours. This notice was broadcast every hour for five minutes, in order to give the inmates sufficient time to read it. The notice was delivered

to Butler County (25 Inmates), Southwestern Ohio Developmental Center (1 inmate), University Hospital (3 inmates), and Summit Behavioral Health Center (47 inmates). In addition, on May 15, at 2400 hours, through May 16, at 2400 hours, a copy of the notice was given to every prisoner being brought into the Hamilton County Justice Center. Concurrently, on May 15, at 2400 hours, a copy of the notice was given to every inmate housed at the Hamilton County Justice Center (1,498 inmates), Reading Road (142 inmates) and Woodburne (37 inmates) facilities. A total of 1,753 paper notices were delivered to inmates in the Hamilton County Justice Center.

If the settlement is approved by the Court, a second notice of the rights of the inmates and terms of the settlement will be posted in the Hamilton County Justice Center in various pods and distributed to inmates along with other Hamilton County Justice Center Information.

**VI. Benefit of Settlement to Class Members**

The initial benefit to Class members is that conditions will improve at the Hamilton County Justice Center immediately, rather than at the end of protracted litigation. For all inmates, the release programs will continue to remain in place. No one with a physical impairment will be assigned to a boat, and boat assignments will not exceed 7 consecutive days in a month. (The 6th Circuit Court of Appeals previously held that an inmate sleeping for seven days on the floor in a jail with a blanket was not an eighth amendment violation.) Finally, if the number of inmates exceeds the formula set out for boat use as determined by the classification system, there is a failsafe system

of additional releases or closing the jail to the admission of additional inmates and allowing the Court to provide further relief.

For Population Inmates, the locations of boats are now limited to the 4 boats in a 16-cell pod and 6 boats in a 24-cell pod, and boat assignments are made through the classification system. Further, there is one additional corrections officer on each floor during the nights boats are in use. These changes reduce the chances for assaults, provide plenty of space between boats so there is less chance of those inmates disturbing one another, and make nighttime medical evaluations and medicine distribution much more efficient.

Lastly, the parties agreed to hire an expert, Dr. Austin, as the Court's expert. Dr. Austin will be charged with evaluating the classification system presently in use and the release programs authorized by the proposed settlement. Dr. Austin will make recommendations to the Court.

**VII.  Why Settlement is Fair, Reasonable, and Adequate**

The settlement is fair, reasonable, and adequate because it addresses the overcrowding issues raise by Major Ketteman's letter declaring an overcrowding emergency from June 14, 2017, and assures that no Eighth Amendment violations will occur.

The use of boats is limited by the agreement. For Population Inmates, they must be separated into the larger pods and the number of boats in each pod is limited. Population Inmates are evaluated prior to being assigned to boats to make certain they

suffer no physical impairment, thus, making boat use difficult or impossible. The separation and numbering system for boats addresses the concerns about medical observation, medical care, and distribution of medication. The additional staffing, boat assignment through the classification system and separation of boats into separate pods reduces the likelihood of inmate-on-inmate assaults. The existing release programs can continue and additional release programs are in place, should the inmate population exceed the limit set by the formula delineated in the settlement agreement. If all release programs fail to solve the overcrowding problem, the sheriff is authorized to stop admitting inmates and seek further guidance from this Court. Lastly, in independent expert for the Court will evaluate the classification system and release programs to make further recommendations concerning the jail population.

## VII. Objectors

On June 12, 2018, the following inmates testified about the conditions in the Hamilton County Justice Center and the proposed settlement agreement:

- Michael Hassan, filed a grievance but was not present at the hearing, and therefore, the Court took his grievance under submission but found it was not meritorious to the settlement;
- Adam Lambert, transported from the jail in Butler County, Ohio, informed the court of the costs to house inmates in other Ohio counties, and articulated concerns regarding the disparity between the Butler County jail versus the Hamilton County Justice Center (e.g., access to telephones, social services,

medication, and attorneys). The Court found that this objection was insufficient to defeat approval of the settlement agreement as conditions at the Butler County Jail were not included in this litigation;

- Eric Jackson informed the Court about his concerns with maintaining and securing personal property for inmates who are assigned to boats. The Court found that the settlement agreement is reasonably designed to alleviate this issue;

- Antwaun Gilden informed the Court of his personal experiences and overall concerns with inadequacy of medical care and classification with other inmates who have immune deficiency viruses (e.g., HIV) in the Hamilton County Justice Center. The Court found that the settlement agreement is reasonably designed to avoid such classification problems;

- Justin Jones informed the Court of his personal experiences and concerns about sleeping on boats, maintaining his property, and sleeping among unsanitary conditions (i.e., near other Population Inmates on boats who are detoxing or ill). The Court found that the settlement agreement is reasonably designed to such problems; and

- DeVonte Banks informed the Court about his personal experiences and concerns about sleeping on boats and the unsanitary conditions surrounding those who are assigned to boats. The Court found that the settlement agreement is reasonably designed to such problems.

**VIII. Monetary Compensation**

There is no monetary award to the Class members or Class representatives. Plaintiff Robinson was awarded $ 5,000 as compensation on Count II of the Complaint, an individual cause of action.

IX. **Attorneys' Fees**

The parties agree that the statuary pay rate for attorneys involved in prison litigation is $ 210.00 per hour. The parties further agreed that the totals calculated below are fair, reasonable, and adequate:

Marc Mezibov has 10.5 hours = $ 2,205.00.

Michael O'Hara has 113 hours plus $ 23.60 in expenses = $ 23,0753.60.

Robert Newman has 230.10 hours =$ 48,321.00.

# ORDER

Based upon the consideration of the above findings, it is the Order of this Court that the proposed settlement of the above captioned case is fair, reasonable, and adequate.

It is the Further Order of the Court that the proposed settlement is adopted by this Court and shall bind Sheriff Neil and the Class members.

IT IS SO ORDERED.

S/Susan J. Dlott_____  
Susan J. Dlott  
United States District Court
